UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ANH NGOC VO, ET AL | CIVIL ACTION |
| VERSUS | NO. 13-1794 |
| CHEVRON U.S.A., INC., ET AL | SECTION "N" (3) |

### ORDER AND REASONS

Before the Court is Plaintiffs' Motion to Remand (Rec. Doc. 7).  The defendants have filed opposition memoranda.  (Rec. Docs. 8 and 10).  Plaintiffs have filed a reply (Rec. Doc. 18), and the Exxon defendants have filed a sur-reply (Rec. Doc. 20).

### I. BACKGROUND:

Plaintiffs, Anh Ngoc Vo, Nga Vo, and Kurtis Tinh Vo, commenced this action in the Twenty-Fifth Judicial District Court for the Parish of Plaquemines, State of Louisiana, seeking compensatory and punitive damages relating to an allision on April 21, 2009, in which plaintiffs' commercial fishing vessel (the *F/V Miss Kimberly*) allegedly struck an unmarked, submerged, unburied pipeline and sank near the end of Empire Canal in Plaquemines Parish, Louisiana. Plaintiffs originally named as defendants the State of Louisiana and numerous oil and gas companies (Chevron U.S.A., Inc., Chevron Pipeline Company, ExxonMobil Oil Corporation, ExxonMobil Pipeline Company, ExxonMobil Production Company, Shell Oil Company, Shell Pipeline Company LP, Plains Pipeline, L.P., Plains Marketing, L.P. and Plains All American

Pipeline, L.P.), alleging that each of the defendants owned, operated, or had custody of the pipeline. The Shell defendants removed the action to this Court on the basis of diversity jurisdiction, asserting that the two non-diverse defendants, the State of Louisiana and Plains All American Pipeline, L.P. ("PAALP"), were improperly joined. *See Vo v. Chevron USA, Inc., et al*, Civ. Action No. 12-1341 (E.D. La.). The Court agreed with the defendants that there was no reasonable basis for predicting that the plaintiffs might be able to recover against Plains or the State on the basis of ownership, custody, or *guarde* of the pipeline. *Id.* at Rec. Doc. 48. However, the Court found that the defendants had failed to carry their burden with respect to plaintiffs' claims against the State for negligent failure to enforce rules, regulations and statutes concerning the abandonment and/or removal of submerged pipelines in the State's waterways. *Id.* On that basis, the Court remanded the case. *Id.*

Back in state court, the State moved to have the claims against it dismissed on an exception of no cause of action and/or motion for summary judgment. The plaintiffs did not oppose the State's motion, but instead voluntarily dismissed the State with prejudice. *See* Rec. Doc. 10-3. Prior to doing so, however, the plaintiffs filed a supplemental petition naming nine new Louisiana defendants: (1) Citrus Realty, LLC; (2) Plaquemines Realty, LLC; (3) River Realty, LLC; (4) Leander H. Perez, III; (5) Paula Landrem; (6) Margaret Barton; (7) Catherine Alford; (8) Chalin O. Perez; and (9) the Parish of Plaquemines (collectively, the "Landowner Defendants"). *See* Rec. Doc. 10-2. Plaintiffs allege that the Landowner Defendants, like the original pipeline defendants, "owned, maintained, put in place and/or [had in their] care, custody, and control" of the pipeline allegedly involved in the allision. *Id.*

2

After the plaintiffs dismissed their claims against the State, the Exxon defendants again removed the case on diversity grounds, alleging that the Landowner Defendants were improperly joined.

## II. LAW AND ANALYSIS:

"To remove a case based on diversity, the diverse defendant must demonstrate that all of the prerequisites of diversity jurisdiction contained in 28 U.S.C. § 1332 are satisfied." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 572 (5th Cir.2004) (en banc). Further, no properly joined, served defendant may be a "citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). Here, there is no dispute that the matter in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. The sole issue is whether there is complete diversity — *i.e.*, whether the citizenship of each defendant is diverse from that of each plaintiff. *See, e.g., Vela v. Manning*, 469 Fed. Appx. 319 (5th Cir. 2012) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806)). In removal cases, as a general rule, "diversity of citizenship must exist both at the time of filing in state court and at the time of removal to federal court." *Coury v. Prot*, 85 F.3d 244, 249 (5th Cir.1996). However, an exception to this rule exists where the non-diverse defendant is dismissed voluntarily by the plaintiff. In such cases, the matter becomes removable even though diversity did not exist at the time suit was filed. *See Weems v. Louis Dreyfus Corp.*, 380 F.2d 545, 548 (5th Cir. 1967); *see also, e.g., Mumfrey v. ANCO Insulations,* 2011 WL 4745626 (E.D. La. 2011). Therefore, if the defendants are correct that the Landowner Defendants have been improperly joined, the case became removable when the plaintiffs dismissed their claims against the State.

### A. The Test for Improper Joinder:

"The doctrine of improper joinder is a 'narrow exception' to the rule of complete diversity, and the burden of persuasion on a party claiming improper joinder is a 'heavy one.' " *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007) (quoting *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir.2005) (internal quotation omitted)). "Improper joinder may be established by either '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.' " *Menendez v. Wal-Mart Stores, Inc.*, 364 Fed. Appx. 62, 68 (5th Cir. 2010) (quoting *Smallwood*, 385 F.3d at 573). Only the second form of improper joinder is at issue here. Thus, the test is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573. "If there is arguably a *reasonable basis* for predicting that the state law might impose liability on the facts involved, then there is no fraudulent joinder. This *possibility, however, must be reasonable*, not merely theoretical." *Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003) (emphasis in original) (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)).

In "predicting whether a plaintiff has a reasonable basis of recovery under state law," the "court may resolve the issue in one of two ways":  (1) "The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant;" or (2) in cases where

4

it appears that the "plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder," the Court "may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Smallwood*, 385 F.3d at 573.  Where the Court finds the latter approach to be warranted, it may "consider summary judgment-type evidence to determine whether the plaintiff has a basis in fact for the claim." *Campbell*, 509 F.3d at 669.  However, the purpose of the summary inquiry is solely "to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Smallwood*, 385 F.3d at 573-74.  The focus is on the propriety of joinder, not the merits, and the plaintiffs' motive for joining the in-state defendant is irrelevant. *Id.*  Further, "the court must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff" and "must resolve all ambiguities of state law in favor of the non-removing party." *Campbell*, 509 F.3d at 669 (internal quotations omitted).

    **B.  <u>Applicable Substantive Law</u>:**

In their complaint, the plaintiffs allege that the pipeline in question was "owned, maintained, put in place and/or in the care, custody and control of" each of the defendants, including the Landowner Defendants, and that through their negligence, the defendants created and maintained a hidden obstruction and hazard, which caused the allision and the plaintiffs' damages. *See* Rec. Doc. 10-2.  The removing defendants argue that the plaintiffs have no possibility of recovering from the Landowner Defendants because none of them ever owned, operated, or had custody, care, or control over any pipeline in or near the area in question.  Therefore, the defendants argue, there is no basis for finding a duty owed by any of the

Landowner Defendants with respect to the pipeline and thus no possibility of recovery from these nine defendants.[1]  In support of their position, the removing defendants have submitted affidavits executed by each of the individual Landowner Defendants and representatives of each of the entities, attesting that they have never owned, built, maintained or had care, custody or control of any pipeline, either in the area of the alleged allision or elsewhere.  *See* Rec. Doc. 10-4.

Plaintiffs have devised several arguments in an effort to demonstrate a reasonable possibility of recovery against the Landowner Defendants.  Because the plaintiffs have no evidence that any of the Landowner Defendants ever had *guarde* over any pipeline in the area, the plaintiffs have attempted to trigger a presumption of *guarde* by establishing ownership of the pipeline in question.  Although each of the Landowner Defendants has disavowed ever owning a pipeline and although plaintiffs have presented no evidence to the contrary, the plaintiffs argue that the Landowner Defendants became owners of the submerged pipeline by operation of law.  Plaintiffs argue that the Landowner Defendants own the water bottoms[2] to which the pipeline is

---

[1] Although the allision allegedly occurred in navigable waters, both sides cite Louisiana law on the issue of whether the Landowner Defendants owe a duty that could support liability.  This is consistent with the Louisiana Supreme Court's analysis in *Giorgio v. Alliance Operating Corporation*, 921 So. 2d 58 (La. 2006), looking to Louisiana law as a source of duty in applying the general maritime law.

[2] Defendants argue that the Landowner Defendants cannot own the water bottoms in question because, as "bottoms of natural navigable water bodies," they are public things which belong to the State.  La. Civ. Code art. 450.  Plaintiff argues that the allision occurred in a man-made canal made on private land owned by the Landowner Defendants.  Because defendants have presented no evidence to the contrary, the Court is required for purposes of this motion to accept the plaintiffs' assertion in this regard.  *Campbell*, 509 F.3d at 669.  "Artificial waterways located on private property for private purposes may...be private things...."  La. Civ. Code art. 450, comment (f).  Thus, for purposes of this motion, the Court will assume that the Landowner

permanently attached[3] and that they acquired ownership of the pipeline pursuant to Louisiana Civil Code article 493.

Article 493 provides that constructions permanently attached to the ground "made on the land of another with his consent belong to him who made them." La. Civ. Code art. 493. "They belong to the owner of the ground when they are made without his consent." *Id.* The article goes on to prescribe rules governing what happens in the former case when the constructor "no longer has the right to keep them on the land of another." *Id.* If he does not remove them within ninety days "after written demand" by the landowner, then the landowner may acquire ownership of the improvements by sending an additional written notice after the ninety days have expired. *Id.* "Until such time as the owner of the land appropriates the improvements, the improvements shall remain the property of he who made them and he shall be solely responsible for any harm caused by the improvements." *Id.*

Here, all of the Landowner Defendants have attested that they have never made written demand or sent written notice regarding the removal of any pipeline or other improvement on any land in the area in question. *See* Rec. Doc. 10-4. Plaintiffs have presented no evidence suggesting otherwise. However, plaintiffs argue that the Landowner Defendants nevertheless could own the pipeline by virtue of its having been made without their consent. *See* La. Civ.

---

Defendants own the water bottoms at the site of the allision.

[3] There is no evidence establishing which particular pipeline was involved in the allision, much less that such pipeline was "permanently attached to the ground" so as to trigger article 493. However, since the defendants have presented no evidence to the contrary, the Court is required for purposes of this motion to accept these facts as alleged by the plaintiffs. *Campbell*, 509 F.3d at 669.

Code art. 493 ("Improvements "belong to the owner of the ground when they are made without his consent."). In support of this argument, plaintiffs point to the statement in the Landowner Defendants' affidavits, wherein they state: "I am unaware of any pipeline being on my land." *See* Rec. Doc. 10-4. According to plaintiff's argument, since the Landowner Defendants were not aware of any pipeline on their property, it must have been made without their consent, and if it was made without their consent, then they own it by pure operation of law, without the need for the appropriation procedure that would have been required had the improvements been made with the landowners' consent.

Defendants argue that the second paragraph of article 493 (establishing the appropriation procedure required to transfer ownership of improvements) should apply even in cases of improvements made on the land of another without consent.[4] The Court need not decide this issue of statutory interpretation, for the plaintiffs' argument fails for more fundamental reasons. First, plaintiffs' argument of liability-by-ignorance ignores the fact that liability based on *guarde* is no longer strict liability in Louisiana. To the contrary, an "owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care." La. Civ. Code art. 2317.1. Plaintiffs'

---

[4] Without deciding the issue, the Court notes that the plain language of the statutory text as well as the comments would appear to support the plaintiffs' interpretation of the article. It is unclear why the legislature would amend the article to protect consenting landowners from liability, while leaving non-consenting landowners vulnerable. Perhaps it was an oversight, or perhaps the legislators reasoned that non-consenting owners were already protected from liability under the existing law of *guarde* and custodial liability, as the Court finds these Landowner Defendants to be, as discussed herein below.

liability-by-ignorance argument hinges on the fact that the Landowner Defendants were unaware of any pipeline constructed on their property.  (Without this fact, the second paragraph of article 493 would apply, and the plaintiffs' one foothold for establishing ownership of the pipeline would disappear.).  Moreover, the pleadings and record are devoid of any facts that would support a reasonable inference that the Landowner Defendants "should have known" of a vice in the pipeline of which they were unaware.  Indeed, plaintiffs' own allegations state that the pipeline was "hidden, submerged, [and] unmarked." Rec. Doc. 10-2 at 2.

Second, the ignorance on which plaintiffs' ownership argument depends precludes any finding of *guarde*.  Things as to which a person has custody or *guarde* "are those things to which one bears such a relationship as [1] to have the right of direction and control over them, and [2] to draw some kind of benefit from them." *King v. Louviere*, 543 So.2d 1327, 1329 (La.1989).  Thus, the inquiry is two-fold.  To determine whether a person has *guarde*, the court must look to "(1) whether the person bears such a relationship as to have the right of direction and control over the thing; and (2) what, if any, kind of benefit the person derives from the thing." *Dupree v. City of New Orleans*, 765 So.2d 1002, 1009 (La.2000); *see also Giorgio v. Alliance Operating Corp.*, 921 So.2d 58, 73 (La.2006).  Both factors must be met.  Here, one cannot reasonably infer that the Landowner Defendants derived a benefit from an abandoned pipeline on their property of which they were unaware and to which they did not consent.  Thus, even if the plaintiffs could establish ownership of the pipeline, the very facts on which they rely to impute this ownership (*i.e.*, ignorance and lack of consent) necessarily preclude a finding that there is a reasonable basis for predicting that plaintiffs will be able to recover on the basis of *guarde*.

To find that the Landowner defendants were properly joined, there must be "a *reasonable basis* for predicting that the state law might impose liability on the facts involved." *Travis,* 326 F.3d at 648 (emphasis in original) (citation omitted). As the Fifth Circuit has emphasized, this possibility "*must be reasonable*, not merely theoretical." *Id.* (emphasis in original) (citation omitted). Here, the defendants have presented evidence that the Landowner Defendants did not have custody or *guarde* over any pipeline in the vicinity of the alleged allision. The plaintiffs have offered nothing to refute the defendants' evidence and their liability-by-ignorance argument fails on the law. Nor have the plaintiffs alleged facts that would support imposing a legal duty on the Landowner Defendants on any other basis. Therefore, the Court finds that the defendants have carried their burden of demonstrating that there is no reasonable basis for predicting that the plaintiffs might be able to recover against the Landowner Defendants.

Accordingly, having determined that all non-diverse defendants are improperly joined;

**IT IS ORDERED** that:

1) Plaintiffs' Motion to Remand (**Rec. Doc. 7**) is hereby **DENIED**; and

2) Plaintiffs' claims against the following defendants are **DISMISSED**: (1) Citrus Realty, LLC; (2) Plaquemines Realty, LLC; (3) River Realty, LLC; (4) Leander H. Perez, III; (5) Paula Landrem; (6) Margaret Barton; (7) Catherine Alford; (8) Chalin O. Perez; and (9) the Parish of Plaquemines.

New Orleans, Louisiana, this 31st day of July, 2013.

**KURT D. ENGELHARDT**
**United States District Judge**

10